# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

### COLUMBIA DIVISION

GEORGE MAURICE T. ADAMS,      )
                                 )
               Petitioner,      )      Civil Action No.  3:11-31-DCN -JRM
                                 )
v.                                     )
                                 )      **REPORT AND RECOMMENDATION**
ANTHONY PADULA, Warden,      )
ALAN WILSON, South Carolina      )
Attorney General,      )
                                 )
               Respondents.  )
_____)

        Petitioner, George Maurice T. Adams ("Adams"), is an inmate with the South Carolina Department of Corrections serving a sentence of life imprisonment plus twenty-five years (consecutive) for murder and armed robbery.  He filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on January 25, 2011. Respondents filed a return and motion for summary judgment on August 22, 2011.  Because Adams is proceeding *pro se*, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4ᵗʰ Cir. 1975) was issued on August 23, 2011 explaining to him his responsibility to respond to the motion for summary judgment. Adams filed his response to Respondents' motion on November 28, 2011.

**<u>Background and Procedural History</u>**

The South Carolina Supreme Court, which affirmed Adams' conviction in April of 1996, summarized the case against Adams as follows:

> According to testimony presented at trial, appellant Adams, James Brown, Rosena Farmer, and a few other friends were smoking crack cocaine together in the early morning on June 17, 1992. About 5:30 a.m., they decided they needed more money for drugs, so Adams and Brown went into a Circle K convenience store located on Columbia College Drive in Columbia. Brown had a gun. Adams and Brown demanded that the cashier give them money, and the cashier complied. Adams, Brown, and the others used the money from that robbery to purchase more crack, which they smoked immediately.

> When they ran out of crack again at approximately 6:00 a.m., Farmer suggested Brown and Adams rob Johnny's Grocery, a small grocery store/grill run by Mildred and Joe Collins. Farmer then directed Brown and Adams to Johnny's Grocery. Mildred Collins testified at trial that two men entered the store. The man in the white shirt (Brown) asked for cigarettes, and the man in the blue shirt (Adams) asked for beer. Because Johnny's Grocery did not sell beer, and also because she was frightened, Mildred Collins suggested the two men try another store down the street, which sold both cigarettes and beer. At that point Brown pulled his gun and demanded money. He took all the money in the cash register.

> Mildred Collins's husband Joe then entered the front of the store. A scuffle apparently ensued between Brown and Joe Collins. After a shot was fired, Joe Collins

2

fell to the ground. One of the men took Joe Collins's wallet and picked up the gun Brown had carried into the store. Brown and Adams then exited Johnny's Grocery. Joe Collins was dead. According to Rosena Farmer's testimony, the money from the robbery was used to purchase more drugs.

Adams was tried for murder and armed robbery in connection with the incident at Johnny's Grocery. The State's theory of the case as to the murder count was that Brown was the trigger man, but that Adams also was guilty of murder under the "hand of one, hand of all" doctrine. The jury convicted Adams of both murder and armed robbery.

State v. Adams, 322 S.C. 114, 116-117, 470 S.E.2d 366, 368 (S.C. 1996).

At trial Adams was represented by William M. Nettles, Esquire and Franklin Draper, Esquire.

The South Carolina Office of Appellate Defense raised the following issues on appeal:

1. The lower court erred in allowing the state to introduce testimony regarding irrelevant and prejudicial prior bad acts into evidence at trial.

2. The lower court erred in quashing the original jury panel selected in the case after finding that the defense exercised its peremptory challenges in a racially discriminatory manner.

3. The lower court erred in denying appellant's request for a reasonable doubt jury instruction in accordance with State v. Manning, 305 S.C. 413, 409 S.E.2d 372(1991).

(App. 567).

After affirmation, the South Carolina Supreme Court returned the Remittitur on May 15, 1996. (Doc.No. 23, attachment 3).

Adams filed his first application for post-conviction relief ("PCR") on May 22, 1996, Adams v. State, 96-CP-40-1786 ("PCR I"). (App. 632). Adams was represented by Tara D. Shurling,

Esquire.  A telephone deposition of one of Adams' trial counsel, Mr. Draper, was conducted on March 14, 2000. (App. 645). An evidentiary hearing was held on October 17 and 18, 2000.  At that time Adams was represented by J. Preston Strom, Esquire and Mario Pacella, Esquire. (App. 666). Adams and his co-defendant, James Brown, testified.  Mr. Nettles, trial counsel, was called as a witness by the State.  The PCR court issued an order of dismissal on August 20, 2002. (App. 743). No appeal of the dismissal was filed.

Almost two years later on July 22, 2004, Adams filed a second PCR, 04-CP-40-3481 ("PCR II").  (App. 749).  The State filed a return in which it argued that PCR II was successive and untimely and should be dismissed pursuant to S.C.Code Ann. § 17-27-45(A).  (App. 776).  The PCR court issued a conditional order of dismissal on June 29, 2005.  (App. 782).  Counsel for Adams, Charlie J. Johnson, Jr., Esquire, did not respond to the order and a final order of dismissal was filed on August 4, 2005. (App. 788). No appeal was filed.

Adams filed another PCR action, 2006-CP-40-562 ("PCR III") on September 26, 2006. (App. 791). Counsel, Charles T. Brooks, III, Esquire, filed an amended application. (App. 801). The State filed an amended return and motion to dismiss, again arguing that PCR III was successive and violated the statute of limitations. (App. 807).  Adams filed a return in opposition. (App. 814).  A hearing was held on September 13, 2007. (App. 824).  On September 27, 2007, the PCR court issued an "Order for Austin[1] Review" in PCR III granting a right to appeal with respect to PCR I.  (App. 856).  The next day the court issued another order which appears to grant the same relief. (App. 859).

---

[1]*See* <u>Austin v. State</u>, 305 S.C. 453, 409 S.E. 2d 395 (1991) allowing belated appeal of dismissal of PCR cases in limited circumstances.

4

An appeal of PCR I was then filed by the South Carolina Commission on Indigent Defense which filed a petition for writ of certiorari and a <u>Johnson</u>[2] petition raising the following issue:

> Whether defense counsel was ineffective for failing to object to a jury charge on reasonable doubt that was burden shifting?

Pursuant to State procedure, Adams filed a *pro se* brief asserting a number of claims of ineffective assistance of trial counsel. The case was transferred to the South Carolina Court of Appeals which denied the petition for writ of certiorari on November 25, 2009. Adams' *pro se* motion for a rehearing was denied on December 7, 2009. The Remittitur was returned on February 25, 2010.

### Grounds for Relief

In his present petition, Adams asserts he is entitled to a writ of habeas corpus on the following ground:

**GROUND ONE**:    Trial counsel's failure to object to the use of an un-charged armed robbery use against petitioner at trial.

> **SUPPORTING FACTS**: Co-defendant James Brown prior bad act of an armed robbery at the Texaco Pitt Stop was presented to the jury through direct and cross-examination of witnesses involving (Brown's) actions during the robbery, for which petitioner was not charged with the crime. See Tr. p. 91, lines 1-25 through Tr. p. 92, lines 1-4; Tr. p. 110, lines 21-25 thru Tr. p. 111, lines 1-25 thru Tr. pg. 112, lines 1-17; Tr. p. 112, lines 20-25 thru Tr. pg. 125, lines 1-16. Tuesday, June 21, 1994.

**GROUND TWO**:    Counsel was ineffective in failing to object to the misleading and incorrect reasonable doubt charge.

> **SUPPORTING FACTS:** The trial judge gave the following instructions: Tr. p. 535, lines 9-16 "the defendant is entitled to any reasonable doubt, a reasonable doubt, a reasonable doubt may exist because of the evidence and testimony in the case, or it may exist because of the lack of evidence or testimony in the case." Trial counsel requested reasonable doubt instruction at Tr. p. 483, lines 4-11. Tr. p. 483, lines 9, 10, trial counsel made motion for instruction to be given, but did not object to the incorrect and misleading definition that was given. Tr. p. 550, lines 1-10. Jury sent

---

[2]<u>Johnson v. State,</u> 364 S.E.2d 201 (S.C. 1988).

trial judge note requesting instruction again on reasonable doubt. Tr. p. 550, lines 15-16, trial counsel requested instructions, but failed to object to the charge. The failure of trial counsel to object the second time deprived petitioner of a fair trial. See Appendix B. No strategic decision or tactical move could render professional trial performance because defense counsel was aware of the manning charge, and counsel should have known that the instructions were incorrect and misleading. Therefore, Petitioner points out additionally that counsel's performance by asking that the Manning charge be given the second time shows counsel was aware of the wrong instruction being given to the jury. The failure of counsel to object to the instructions being given the second time denied him his Sixth and Fourteenth Amendment right to a fair trial.

**GROUND THREE:** Counsel was ineffective in failing to secure Lt. Wilson for cross-examination.

**SUPPORTING FACTS:** Tr. p. 95, lines 3-7; Tr. p. 103, line 9-19; Tr. p. 105, lines 5- 24; Tr. p. 106, lines 1-25 thru Tr. p. 115, lines 1-10. Cpl. David Lawrence testified during in camera hearing that he received all his information from Lt. Wilson. In regard to all the other state witnesses, and evidence offered at trial, Cpl. Lawrence stated that Lt. Wilson gathered all the probable cause information to obtain the search warrant. Because this witness Lt. Wilson gather[ed] all the evidence, [and] interviewed all the witnesses in this case, this material witness could have established the fact that the petitioner did not commit the crimes charged. The judge and jury relied upon what information Cpl. Lawrence testified to at trial concerning the probable cause information used to obtain the warrants. Co-defendant Roberta Farmer was questioned during trial by defense counsel at Tr. Pg. 333, lines 20-23 thru Tr. Pg. 335, lines 1-20 about providing Lt. Wilson with information on petitioner [on] June 17, 1992. She stated she never provided nobody (sic) with information on petitioner [on] June 17, 1992. See (Appendix C). The right to confront this material witness guaranteed by the Sixth and Fourteenth Amendments was violated by counsel[]. Therefore, because no other witness at trial testified to the hearsay information used by Cpl. Lawrence at trial, counsel['s] denial to call Lt.Wilson was ineffective assistance.

**GROUND FOUR:** Counsel rendered ineffective assistance during the preliminary hearing for failure to obtain the June 18, 1992 arrest warrants.

**SUPPORTING FACTS:** According to testimony given by officers at trial, petitioner was arrested June 17, 1992. June 30, 1992. Hon. Walter Jones chief Magistrate of Richland County received a request for a preliminary hearing from petitioner's first counsel Jeffrey P. Bloom, Assistant Public Defender of Richland County on July 6, 1992, Richland County Chief Deputy Clerk of Court, David W. Murphy, notified the office of attorney Barry George, Esq., petitioner's new counsel August 3, 1992.

Honorable Walter Jones notified attorney George that the preliminary hearing would be held August 19, 1992. Petitioner was booked June 17, 1992 by Cpl. Lawrence at 1500 hours stating that he obtained arrest warrants and a search warrant signed by Judge Womble. At trial counsel did not present to the judge nor jury officer Leatherman's completed report concerning the warrants process after his investigation, which preliminary hearing counsel was privy too during the preliminary hearing. Pursuant to the June 18, 1992 arrest warrants and search warrant, Officer G. Ross delivered two arrest warrants to petitioner June 18, 1992, signed by an unidentified person. Officer Barlett was the sworn affiant on the arrest warrants. A stamp pis indicated on the warrants to be returned to a judge Samuel Peay. Mr. George never challenged at the preliminary hearing the June 18, 1992 arrest warrants. See Officer Barlett testimony at the preliminary hearing Tr. p. 29, lines 12-25 thru Tr. pg. 34, lines 1-7. The counsel admitted to not having the warrants. Cpl. Lawrence was not the affiant on the June 18, 1992 warrants. No warrants fro petitioner arrest exist June 17, 1992. Tr. p. 9, lines 4-22, is perjury testimony pursuant to obtaining arrest warrants June 17, 1992. When petitioner contacted Judge Womble's office about signing of the warrants. The judge's law clerk informed petitioner that no warrants was located in the files for June 17, 1992. Petitioner then contacted Judge Peavy office about the arrest warrants being returned to him, and the clerk stated that the warrants were out of that office jurisdiction. See (Appendix D).

**GROUND FIVE:**    Counsel rendered ineffective assistance in failing to object to the false and perjured testimony adduced to obtain the search warrant.

**SUPPORTING FACTS:** Petitioner's mother's home was searched June 17, 1992. A search warrant with Judge Womble's signature was on the warrant provided by Cpt. Lawrence at trial on June 20-23, 1994, which this officer swore that he was sworn as the affiant June 17, 1992, by Judge Womble at 5:47 a.m. Tr. pg. 92, lines 18-24; Tr. pg. 93, lines 24-25 thru Tr. pg. 94, lines 1-8. Cpt. Lawrence testified that co-defendant James Brown implicated petitioner as being involved in incident and that Brown had picked petitioner out in a photo line-up prior to the judge signing the search warrant. But the photo line-up pictures used at trial could not have been in the possession of Cpl. Lawrence because petitioner's pictures identifies the left side of his face is swollen from surgery on his mandible that was broken in three places. Petitioner had not been arrested after the surgery in order for the sheriff's office or Cpl. Lawrence to come into possession of such photo spread of petitioner. The officer testified that he provided information obtained from Brown, co-defendant Framer and Carl Lewis on June 17, 1992 to Judge Womble, Tr. p. 95, lines 17-25 thru Tr. pg. 96, lines 1-11; Tr. pg. 97, lines 6-23, Tr. pg. 98, lines 4-25 thru Tr. pg. 99, line 1. A review of petitioner's medical records from the county jail would have showed that petitioner was arrested with this scare. In Brown first statement used as Cpl. Lawrence testimony for probable cause, nothing mentioned Framer, Lewis or Boyd. Brown implicated Retina Adams who was in jail on June 17, 1992 and could not have

been present at the incident. Nothing was established on the grounds that Cpl. Lawrence knew Brown to be reliable. No evidence was presented by trial counsel in support of the motion to suppress the evidence, from the discovery materials. Tr. pg. 114, lines 17-21, counsel made no objection to the improper comment made by the trial judge on evidence. Tr. pg. 114, lines 22-25 thru Tr. pg. 115, Lines 1-10. The Judge knew the information was false. Tr. p. 117, lines 15-24, Tr. pg. 233, lines 6-12; Tr. pg. 235, lines 9-15; Tr. pg. 301, lines 24-25 thru Tr. pg. 302, lines 1-9; tr. Pg. 305, lines 11-25 thru Tr. pg. 306, lines 1-22; Tr. pg. 310, lines 1-25 thru Tr. pg. 312, lines 18-20; Tr. pg. 330, lines 24-25; Tr. pg. 332, lines 20-21; Tr. pg. 333, lines 20-25 thru Tr. pg. 335, lines 1-20; Tr. pg. 343, lines 1-24; Tr. pg. 352, lines 10-25 thru Tr. pg. 354, lines 1-6; Tr. pg. 400, lines 9-13; Tr. pg. 406, lines 4-18; Tr. pg. 410, lines 5-22; Tr. pg. 411, lines 3-25 thru Tr. pg. 412, lines 1-21, Tr. pg. 413, lines 22-25 thru Tr. pg. 414, lines 1-25 thru Tr. pg 419, lines 1-15; Tr. pg. 420, lines 21-25 thru Tr. pg. 422, lines 1-25; and Tr. pg. 447, lines 7-18. See (Appendix E).

**GROUND SIX:**     Counsel was ineffective for not challenging the perjury testimony used at trial on probable cause which the officer adduced as reliable to obtain the arrest warrants.

**SUPPORTING FACTS:** Petitioner was taken into custody by Richland County Sheriff Phil Bartlett June 17, 1992, and booked into Richland County Detention for only armed robbery. Tr. pg. 54, lines 19-25 thru Tr. pg. 55, line 1-3. Officer Bartlett testified during in camera hearing that "an arrest warrant had been acquired for petitioner along with a search warrant." and that he warrants were for murder/armed robbery on June 17, 1992. This officer name appears on the June 18, 1992 arrest warrants fro murder/armed robbery. No other arrest warrants appear in the Rule 5 discovery. Counsel never present to the court tor jury the dates on the arrest warrants while questioning this witness. Counsel deprived petitioner a defense against the false evidence and testimony and the Solicitor soliciting the testimony allowed it to go uncorrected when it appeared. The evidence obtained would have been suppressed. No arrest warrants was issued by Judge Womble to arrest petitioner and remove him from inside his mother's home June 17, 1992. The warrantless entry would have supported counsel's motion to suppress the evidence. Counsel had all the documentation during trial needed to challenge the arrest of petitioner if counsel would have conducted a proper investigations. Tr. pg. 55, lines 10-25 thru Tr. pg. 56, lines 1-24; Tr. pg. 59, lines 3-21 Tr. pg. 119, lines 1-11, Tr. pg. 67, lines 15-19; Tr. pg.303, lines 12-19; the jury was exposed to the perjury testimony. Tr. pg. 400 lines 4-10. Officer Mincey testified that Cpl. Lawrence obtained the arrest warrants on June 17, 1992, and that petitioner was apprehended while inside his mother's residence. Tr. pg. 400, lines 11-18. Evidence also shows that officer Mincey was present when petitioner was booked into the county jail. Tr. pg. 402, lines 14-25 thru Tr. pg. 403, lines 1-10. When counsel cross-examine of Mincey facts reveal that no questioning took place concerning what petitioner was booked into the county jail for. At Tr. pg.

8

412, lines 13-17, the Solicitor allowed perjury to be committed. When officer Bartlett was questioned by the Solicitor on the witness stand about the obtaining of the arrest warrants at Tr. pg. 421, lines 2-5. Facts were discovered that Richland County Sheriff Officers did not know petitioner existed June 17, 1992 when James Brown was placed as witness in a photo line-up at Tr. pg. 422, line 12-25 the solicitor questioned officer Bartlett about the arrest warrants on June 17, 1992, and Officer Bartlett stated that Cpl. Lawrence obtain those documents entirely. How could petitioner be in legal custody June 17, 1992 or prospective. Tr. pg. 423, lines 8, 9 at Tr. pg. 433, lines 5-8. Counsel objected on grounds not clear on challenging the arrest warrants. Tr. pg. 436, lines 12-23, officer Bartlett was present when petitioner was booked into the county jail. From the trial record, it is not clear whether counsel were aware of the officer's conduct prohibited at trial pursuant to the obtaining of the arrest warrants, or whether counsels knew of the evidence in his possession did no indicate Judge Womble sign arrest warrants June 17, 1992 or June 18, 1992. The officers used the warrantless arrest to strengthened their case with a confession from petitioner. Their conduct was knowing and intentional because petitioner's right to counsel did not attach at the time of the false arrest. The warrantlesss intrusion into petitioner's home (sanctum) was an assault on the petitioner's solitude and on the family communal bonds. Through the record and evidence, petitioner has pointed out that he was forcibly taken from his mother's home without a valid arrest warrant, handcuffed, and then forced at gun point to accompany the officers to the police station. If counsel would have shown that the detention was illegal June 17, 18 and 19, 1992, the incriminating statement would have been suppressed. The best case scenario established from what counsel[] did here was to avoid a major expenditure of time and effort on the case. See Appendix F)

**GROUND SEVEN:**   Counsel was ineffective fore failure to challenge the chain of custody on the evidence used at trial.

**SUPPORTING FACTS:** Pursuant to a search warrant signed June 17, 1992, the premises of Apartment 2-C at Roosevelt Village was searched by Richland County Sheriff Officers, and the following items were seized, and used in petitioner's trial. (1) multi-colored tshirt, (2) black denim trouser, (3) Taurus 38 caliber serial number 799948. The items somewhat fit the description given by the witness on the date of the incident. Tr. pg. 304, lines 3-14. The solicitor displayed the handgun to the jury. Tr. pg. 305, lines 11-17. Solicitor put photographs of the pistol into evidence as Exhibits 23 and 24. Then questioned the witness further concerning the actual evidence at Tr. pg. 305, lines 18, 19 which was admitted without objection as Exhibit 14. The solicitor then moved to have the clothing introduced at Tr. pg. 306, lines 7-25 through Tr. pg. 307, lines 1-4. Trial counsel neither made an objection to the use of the clothing pursuant to the chain of custody. If any evidence in the petitioner's favor existed on the clothing[], the clothing[] was tainted, because none of the officers submitted these items into evidence room at the county jail after seizure from the apartment June 17, 1992. Neither solicitor nor counsel established during trial where

9

this evidence was kept until January 18, 1993, when sent to SLED to be tested under no case number about a year. The evidence was not even returned to judge Womble who suppose[dly] signed the warrants. Counsel allowed the solicitor to introduce to that the clothing[] were removed from petitioner's residence. When the apartment was leased by Morna Adams and petitioner's name was not on the lease. If counsel would have called Morna Adams, she could have introduced documentation and testimony concerning the clothing[] , and petitioner's residence. Tr. pg. 311, lines 12-18; Tr. pg. 404, lines 17-20; Tr. pg. 408, lines 1-17; Tr. pg. 422, lines 19-21; Tr. pg. 433, lines 15-19, Tr. pg. 456, lines 21-25. In order to link petitioner to the evidence, the solicitor had to prove that petitioner resided at the residence. Moreover, because the items analyzed and passed through the hands of several officers, the evidence should not have been left to the defense, neither the court or jury to conjecture as to who had it, and what was done with it between the taken and the analysis. As recorded in the search warrant's return, and evidence log sheets of the county jail. Exhibits 14, 25, and 26 were handled by Sgt. Zane Padgett, Investigators Dale Surrett and Jim Berlin. Counsel's failure to object, and require to Solicitor to show where the evidence was kept prior to sending the items to be tested, allowed the evidence to be used against the petitioner. Tr. 232, lines 17-25 thru Tr. pg. 233, lines 1-12. As to Exhibit 14 being the item stolen from the incident scene belonging to a Charles Flowers, no witness brought forth evidence to establish the fact that the serial number traced back to Mr. Flowers being the owner of the weapon. See (Appendix G)

**GROUND EIGHT:** Counsel's failure to object and request the solicitor show pretext and counsel's failure to object to jurors who were struck from the first jury panel placed back into the jury pool and on the jury picked.

**SUPPORTING FACTS:** On Monday June 20, 1994, counsels and the solicitor commenced selecting a jury for petitioner's counsels exercised his federal constitutional right to peremptorily strike seven (7) jurors. Tr. pg. 21, lines 1-25 thru Tr. pg. 30, lines 1-16. Solicitor motioned the court for a Batson race neutral reason for the strikes. Tr. pg. 31, lines 2-25 thru Tr. pg. 43, lines 1-6. Counsel was ordered to provide one (1) race neutral reason for the strikes. Counsel gave the explanation. Tr. pg. 43, lines 7-25 thru. Tr. pg. 44, lines 1-16. The trial judge ruled that the preemptory strikes were not racially neutral and the first jury was dismissed. Tr. pg. 44, lines 17-25 thru Tr. pg. 47, lines 1-12. Trial counsel never objected to the solicitor's failure to show pretexual during the Batson hearing. Petitioner will how that the hearing was unfair. Such failure denied petitioner a right to a impartial jury, not to be thrown out until a full Batson hearing was held. Appellate counsel's failure to notice the error denied petitioner effective assistance on appeal with this claim. Petitioner's impartial jury of his peers, as first selected, would not have been violated if trial or appellate counsel would have presented these facts. Tr. pg. 21, lines 9-12, number 77, Ann Godfrey was excused from the trial of the case. Tr. pg. 23, lines 12-

14, Juror 117, Loren Klopping was excused from the trial of the case. Tr. pg. 23, Lines 22-24, no. 33, Shelia Coleman was excused from the trial of the case. Tr. pg. 24, lines 22-24, No. 143 Donald Meyers was excused from the trial of the case. Tr. pg. 27, Lines 8-11, no. 81 Javis Gore was excused from the trial of the case. Tr. pg. 27, lines 24-25 thru Tr. pg. 28, line 1, no. 102 Aliene Humphries was excused from the trial of the case. Tr. pg. 29, lines 12-14, no. 64 Tonya Franks was excused from the trial of the case. If trial and appeal counsel would have presented the facts above at Tr. pg. 163, lines 3-25 thru Tr. pg. 164, line 1. The trial judge or Supreme Court judges would have took to the exception of petitioner being subjected to the potential harm of having the seven (7) jurors whom he should have been allowed to remove from the jury panel sit on the jury that convicted him. Tr. pg. 164, lines 4-8.

**GROUND NINE:**        South Carolina Department of Corrections is without subject matter jurisdiction to hold petitioner on an unindicted charge not sentenced.

**SUPPORTING FACTS:** [The] Richland county grand jury indicted petitioner for murder/armed robbery October 15, 1992 for crimes that occurred on June 17, 1992. June 20-23, Petitioner proceeded to trial before jury, and was found guilty and sentenced for both crimes listed in the indictments. South Carolina Department of Corrections classification have listed in the computer two crimes, one for murder/armed robbery, but the offense dates are February 8, 1993. These crimes that occurred in 1993 are not crimes for which petitioner was sentenced for June 23, 1994. South Carolina Department of Corrections has been holding petitioner on these crimes since 1993 of June, the date Petitioner was sentenced, on February 8, 1993 crimes not indicted by the grand jury.

**GROUND TEN:**        Counsel was ineffective for failure to request the charge on the use of co-defendants guilty pleas at trial.

**SUPPORTING FACTS:** At trial, the solicitor called co-defendant Rosena Farmer to testify against petitioner. Tr. pg. 334, lines 11-25 thru Tr. pg. 335, lines 1-20. Because of Framer's strong motivation to shift the blame to petitioner in order to exonerate herself, trial counsel should have requested limiting instructions to be given. Farmer's statement admitted at Tr. pg. 343, lines 9-25 thru Tr. pg. 344, lines 1-18, as evidence at trial required extrinsic corroboration. An objection was made by counsel but no grounds stipulated applicable for the objection. No evidence corroborated Framer's testimony at trial. Tr. pg. 329, lines 1-12. Counsel failed to ascertain that limiting instructions kept the jury from considering the content with respect to the guilty of anyone but Framer. The use of Framer's out-of-court statement is one of admissibility, rather than simply of weight of evidence. Tr. pg. 539, lines 12-25. Petitioner directs this court to the solicitor's use of a nontestifying co-defendant's guilty at trial which counsel did not object. Tr. pg. 415, lines 11-25 thru Tr. pg. 416,

lines 1-13.Co-defendant James Brown's guilty plea indictment should not have been used as substantive evidence against petitioner. Because Brown did not testify at trial. Brown's guilty plea indictment could not be used to attack petitioner's credibility or innocence. Tr. p. 499, lines 21-23; Tr. pg. 500, lines 19-20; Tr. pg. 520, lines 22-25; Tr. pg. 482, lines 3-25 thru Tr.pg. 486, lines 1-10. Both the solicitor and counsel made references to the guilty pleas in their closing arguments to the jury.

**GROUND ELEVEN:**        Counsel was ineffective by providing erroneous advice regarding whether petitioner should testify.

**SUPPORTING FACTS:** Petitioner had a right to testify to meet the prosecution's case. In the instant case, the record establishes that petitioner was advised by counsel not to testify. Tr. pg. 479, lines 14-25 thru Tr. pg. 484, lines 1-8. The basis for this advice by counsel was petitioner's prior record which would have been used for impeachment purposes. A general principle of petitioner's right is to make a valid waiver of a trial right voluntarily and intelligently. Petitioner contends that impeachment was not justification of advice from counsel to remain silent about the incident, since no other evidence was established at trial supporting petitioner's defense of mere presence save his own testimony. Thus, the testimony of petitioner and co-defendant Brown was necessary to establish a factual predicate for petitioner's defense. Had petitioner been so advised, he would have invoked his right to testify. Petitioner's counsel provided erroneous advice which denied a prima facie defense to the charges.

**GROUND TWELVE:**        Counsel was ineffective for failure to call James Brown to testify to exculpatory evidence.

**SUPPORTING FACTS:** On January 14, 1994 James Brown swore in an Affidavit that petitioner did not know or participate in the murder/armed robbery of Joe Collins. According to Brown: "All of us were out of our minds and completely under the influence of cocaine. Though it is true that George Maurice Adams and I have committed robberies together, the Collins robbery was a spur of the moment crime on my behalf. This is why we left the shotgun out of the store. I had Carl's pistol, but Bubba (George Adams) did not know it. Bubba was as surprised as Mr. Collins." Petitioner counsel were aware of this information and failed to call Brown as a witness at trial. Trial counsel strategy to exclude such exculpatory and probative evidence caused prejudice, because the testimony of Brown at the evidentiary hearing at Tr. p. 15, lines 12-25 thru Tr. pg. 34, lines 1-15, strongly supports petitioner's defense that he was merely present during the commission of the crimes at Mr. Collins' business. See (Appendix H).

**GROUND THIRTEEN:**       Counsel rendered ineffective assistance
                          at the Jackson-Denno Hearing.

**SUPPORTING FACTS:** At the time petitioner was question[ed], he was under the influence of crack cocaine. Petitioner's testimony would have demonstrated that his drug use affected his mental ability to appreciate, and understand the nature, and extent of the right he was waiving. Co-defendant Brown would have corroborated that petitioner and Farmer that they had smoke cocaine all day plus on the morning prior to his arrest. According to the officer who questioned petitioner, he appeared to be stable. However, this officer nor any officer tested petitioner nor have a medical expert to assess whether petitioner retained the mental facilities to knowingly and intelligently execute the waiver of his privilege against selfincrimination. The officers did not testify to facts which demonstrated that petitioner understood the possible consequences of a confession, which is the right of demonstrating competence. Implicit in this case is that for the confession to be inadmissible due to a mental deficiency, the deficiency affected petitioner's ability to appreciate the nature, and extent of the rights he was waiving, and understood the statement he was making. In the instant case, petitioner's counsel implied that petitioner was under the influence of cocaine during his alleged confession when cross-examining the officers. However, had trial counsel called petitioner to testify about his drug use on the day of the alleged statement, it would have supported the fact that he did not have the capacity to waive the rights. In furtherance, facts were established that the officers told petitioner that codefendant Brown identified him as the triggerman. Petitioner also could have testified to facts that the officers threatened him with the electric chair if he did not confess. The combined effects of petitioner's cocaine use, and the threats made by the police officers also was not explored at the hearing. Petitioner's trial counsel erred in not calling petitioner as a witness for the purpose of the Jackson-Denno hearing to establish foundation for his argument that the statements were not made knowingly, intelligently, and voluntarily. Petitioner would have demonstrated above facts.

**GROUND FOURTEEN:**       Petitioner was denied by the PCR
                          Judge on the first application
                          dismissing his PCR specific findings of
                          facts in the order in regards to each
                          issue amended/raised.

**SUPPORTING FACTS:** Petitioner amended his first PCR application September 16, 1996, and March 23, 1998 through PCR counsel Tara D. Shurling, Esq. With above allegations Grounds one through Ground Ten. October 9, 2000, second PCR counsel Mr. Storm assistant Mr. Pacella further amended the PCR application with grounds Eleven through Ground Thirteen. During the evidentiary hearing held October 17, 18, 2000, petitioner testified at Tr. pg. 35, lines 5-25 thru Tr. pg. 62, lines 1-12. Respondent attorney did not deny the issues. Tr. pg. 74, Lines 6-25 thru Tr. pg.

75, lines 1-25. Because the respondent's did not deny the averments, the relief petitioner seeks is admitted. Petitioner maintains in this federal petition that the PCR court's order dismissing his first PCR application does not rule on all the allegations. Nor does it contain specific finding of facts regarding each issue raised in his first application, and at the hearing thereon. See (Appendix I).

**GROUND FIFTEEN:**      Petitioner asserts that South Carolina Supreme Court was without proper subject matter to transfer the writ certiorari PCR appeal tot he South Carolina Court of Appeals.

**SUPPORTING FACTS:** Petitioner['s] notice of intent to appeal from denial of postconviction relief was filed by PCR counsel and appellate counsel in the original jurisdiction fo the South Carolina Supreme Court on October 4, 2007. Pursuant to an Order dated July 11, 2008, Petitioner['s] case was transferred to the South Carolina Court of Appeals and [neither] Petitioner['s] appellate counsel nor the court informed him of the decision. The order was signed by the Supreme Court Chief Justice. Petitioner's appeal did not meet any of the criterial determination to be removed from its original jurisdiction. Petitioner contacted appellate counsel inquiring about the status of the appeal prior to receiving the order. January 7, 2009, appellate counsel informed petitioner that the South Carolina Supreme Court had not taken any action on case. Appellate counsel provided petitioner false information on the appeal. The correction of errors through this appeal was South Carolina duty in the Supreme Court. Therefore, petitioner request that this court grant such relief as deemed necessary. See (Appendix L.)

**GROUND SIXTEEN:**      Petitioner asserts that his appellate counsel on writ certiorari was ineffective for failing to properly address all the claims preserved for appellate review.

**SUPPORTING FACTS:** September 16, 1996, petitioner's first PCR application was amended with the following allegations 1-3 above. March 23, 1998, petitioner again amended the first PCR application with grounds 4-10 and 17, 19-23. October 9, 2000, PCR counsel Mr. J.P. Strom and Mr. Mario A. Pacella further amended the first PCR application with allegations 11-13. After the evidentiary hearing on the third PCR application September 13, 2007, petitioner was granted a belated appeal on all issues raised in the first PCR application under civil action No.: 96-CP-40-1786. Appellate counsel with all the other issues on appeal. In Respondent's return brief on belated appeal. February 22, 2008, respondent requested the court grant leave to address each issue presented in the first PCR application, but appellate counsel did not submit a brief on the issues. September 13, 2007, the Honorable G. Thomas Cooper, judge

granted the belated appeal right. Therefore, above grounds and all other grounds is to be reviewed by this court. See (Appendix L.)

**GROUND SEVENTEEN:** Petitioner asserts he was denied effective assistance of trial counsel because of the court's [failure] to acquire subject matter jurisdiction to convict him on a illegal indictment brought by the grand jury October 15, 1992.

**SUPPORTING FACTS:** Solicitor presented his presentments to the grand jury of Richland County on murder/armed robbery indictments 92- GS-40-11316, 17. These indictments are signed and true billed stamped by grand jury foreman Joyce S. Mothery. Richland County General Sessions court is held at Columbia on the second Monday in January for only two weeks, on the second Monday in June for only two weeks, and the Tuesday following the first Monday in September for three weeks, and the second Monday in December for only two weeks. These indictments were convened upon and returned during the term of court without juries to hear equity matters not requiring a jury trial. Where such term are on the third Monday in February, on the third Monday in May and on the fourth Monday in October, each for one week. Trial counsel did not challenge the bringing of these indictments during the October term of general sessions court, because the Richland County grand jurors could not have properly, constitutionally acted without a special order from the chief justice in the South Carolina Supreme Court. Therefore, the sentences and convictions are in violation of the petitioner's constitutional right and is requested to be vacated.

**GROUND EIGHTEEN:** Petitioner's pro se 59(e) motion served on his first PCR application has not been ruled on by the lower court.

**SUPPORTING FACTS:** August 20, 2002, Honorable L. Casey Manning signed an order dismissing the first PCR application. August 26, 2002, Ms. Nicole J. Counts, legal assistant to PCR counsel forwarded petitioner a copy of the order. September 9, 2002, prison officials received the order. September 17, 2002, the court granted the petitioner the right to serve his pro se 59(e) motion. September 23, 2002, the 59(e) motion as served. The motion was not ruled upon. September 26, 2006, Petitioner third PCR application was filed in the court. July 19, 2007, in PCR counsel's opposition to the state's return and motion to dismiss, the 59(e) motion was addressed on the status of still pending. At the evidentiary hearing on September 13, 2007, the Honorable G. Thomas Cooper, judge, addressed the pending of the 59(e) motion, but never issued an order on his ruling. See (Appendix I and K).

**GROUND NINETEEN:**     Petitioner asserts that the jury trial judge unconstitutional instructions on the law of inferred malice from the use of a deadly weapon, prejudiced him to a fair trial.

**SUPPORTING FACTS:** This issue is supported by a new rule of constitutional law made retro-active, and without the instructions, no reasonable jury would have fund petitioner guilty. At Tr. pg. 221, lines 3-9, evidence existed that a scuffle took place between the victim and petitioner's co-defendant (Brown). Trial counsel requested a jury instruction to be given on voluntary manslaughter at Tr. p. 483, lines 12-25 thru Tr. pg. 484, lines 1-4. During the charging of the law by the trial judge to the jury, the following instructions at Tr. p. 542, lines 3-10, were given: "Now, law says that if one intentionally kills another with a deadly weapon, an inference of malice may arise." Trial counsel requested for correct instruction at Tr. pg. 546, lines 3- 25 thru Tr. pg. 548, lines 1-3. June 23, 1994, the jury sent a note to the trial judge during deliberation at Tr. pg. 550, lines 1-10, requesting for written instructions. During a colloquy between the judge and counsels, the court stated that a substantive charge of murder would be given for the second time. Counsel renewed his challenge to the instructions. Tr. pg. 550, lines 24-25 thru Tr. pg.553, lines 16-23, the following charge was given: "Now the law says that if one intentionally kills another with a deadly weapon, an inference of malice may arise." The record indicates that Petitioner never had a gun. Co-Defendant, James Brown admitted to the shooting in two statements on June 17, 1992, and January 12, 1994. Brown also stated that (AR) Lewis another co-defendant gave him the gun. The new law on a criminal prosecution of inferred malice from the use of a deadly weapon jury instruction has been applied retroactively. The court never ruled that a mere use of a deadly weapon under these circumstances permitted an inference of malice. Petitioner was placed wit the burden of proof to rebut such presumption. The trial judge placed a special emphasis on the use of a gun and not the struggle. The error lies in the instructions and the convictions and sentence is to be vacated. See (Appendix H)

**GROUND TWENTY:**     Trial counsel[] rendered ineffective assistance for failure to hold the requested preliminary hearing on the June 18, 1992 arrest warrants.

**SUPPORTING FACTS:** Petitioner while housed in Richland County detention center awaiting trial contacted Mr. Rodney Patton, paralegal at the Richland County Public Defendant's office who met with petitioner. January 7, 1994 where a colloquy was discussed about a conflict of representation by Barry B. George, Esq. And petitioner wanted new counsel. May 11, 1994, new counsel Bill Nettles reviewed the case from the Public Defenders office. Mr. Nettles discovered that a preliminary hearing was requested on the arrest warrants dated June 18, 1992. June 20, 1994,

Petitioner counsel allowed the trial to begin without holding the preliminary hearing as requested. If petitioner would have been given the preliminary hearing prior to trial, facts would have been presented that judge Womble did not sign the arrest warrants. Because counsel did no investigation, facts was not discovered that the arrest warrants was false, and because the trial court was without proper jurisdiction until the preliminary hearing was held, counsel should have motion that the Magistrate retain jurisdiction until the preliminary hearing. Counsel did not even notice that the arrest warrants and search warrant have two different signatures. And the arrest warrants was to be return to Judge Samuel Peay who did not have jurisdiction over the charges. See (Appendix N.)

**GROUND TWENTY-ONE:**

Trial counsel were ineffective and denied Petitioner his sixth and fourteenth amendment rights to a fair trial were accomplice (Brown) did not testify and his guilty plea statement was used in petitioner's trial.

**SUPPORTING FACTS:** In the instant case, petitioner, in reliance on the fifth amendment privilege against self-incrimination, did not testify, his credibility, therefore was not at issue. Consequently, the admission of James Brown's guilty indictments served only as an attempt to show the petitioner's guilty by association. See. Tr. pg. 415, lines 11-25 thru Tr. pg. 416, lines 1-13. Petitioner's right of confrontation began with the Supreme Court's view and analysis to promote reliability in a criminal trial. (Brown) accomplice, was presumptively unreliable. The indictments of Brown, who is a co-defendant, about what he said or did, at his guilty plea hearing, was less credible than ordinary hearsay evidence because of the strong motivation of the co-defendant to shift the blame to the petitioner and try to exonerate himself. Petitioner's inability because of trial counsel's strategy decision not to move for the indictments to be suppressed, denied petitioner the right to confrontation. The court has noted that confession added substantial, perhaps even critical weight to the case in a form subject to cross-examination. Therefore, because no instructions was requested by counsel to instruct the jury not to consider the indictments of Brown as evidence against petitioner, the convictions and sentences is to be vacated.

**GROUND TWENTY-TWO:**

Petitioner was denied effective assistance of trial counsel for failure to present evidence of the grand jury who returned the trial indictments. Also returned another indictment for armed robbery being committed on June 19, 1992.

**SUPPORTING FACTS:** June 17, 1992 Petitioner was arrested for murder and armed robbery and placed in the Richland County Detention Center jail without bond.

17

Petitioner stayed in the county jail until June 20, 1994, the date his trial began. There is no way petitioner could have committed the June 19, 1992 armed robbery and the indictments could not have been returned by a grand jury. Therefore, petitioner requests this court review the process of the indictment procedures on October 15, 1992, and dismiss all indictments. See (Appendix O.)

**GROUND TWENTY-THREE:**

Petitioner's trial counsel were ineffective for failure to challenge petitioner's participation in the event leading up to and following the murder of Joe Collins, where Petitioner was given a greater sentence imposed by the South Carolina Court constitutionally permissible when petitioner neither specifically intended to kill the victim and neither inflicted the fatal gunshot wound.

**SUPPORTING FACTS:** According to testimony presented at trial, petitioner Adams, James Brown, Rosena Farmer, Carl Lewis and Ricky Boyd were smoking together in the early morning on June 17, 1992. About 5:30 a.m., they decided they needed more money for drugs, so Adams and Brown, Carl, Rosena, and Ricky went into a Circle K convenience store located on Columbia College Drive. Brown had Carl Lewis' gun. Adams and Brown demanded that the cashier give them money, and the cashier complied. Adams and Brown and the other codefendants used the money from that robbery to purchase more crack, which they smoked immediately. When they ran out of crack again at approximately 6:00 a.m., Farmer suggested Brown and Lewis rob Johnny's Grocery, a small grocery store/grill run by Mildred and Joe Collins. Farmer then directed Boyd (driver) to Johnny's Grocery. Mildred Collins testified at trial that two men entered the store. Petitioner was not aware that Carl Lewis had given Brown a gun. Brown asked for cigarettes, and Adams asked for beer. Petitioner pulled out money to pay for the contents, but was informed that the store does not sell beer, and also because Mrs. Collins was frightened, she suggested the two men try another store down the street, which sold both cigarettes and beer. At that point Brown pulled the gun and demanded money. Ms. Collins' husband Joe then entered the back of the store. Brown ran to the back of the store where a scuffle ensured between Brown and Mr. Collins. After a shot was fired, Mr. Collins fell to the ground. Brown took all the money out of the cash register, took Mr. Collins' wallet and picked up the gun Brown carried from the store. Petitioner left the store because he did not know what to do. Petitioner went home. Brown and the others used the money to purchase more crack and a motel room. Petitioner was tried for murder and armed robbery in connection with the incident at Johnny's Grocery. Brown plead guilty and was sentenced to a 30 year life sentence. Farmer pled guilty to 10 years. Lewis and Boyd was out free. The state's theory of the case as to the murder count was that Brown was the trigger man, but that Petitioner also was guilty of murder under the "hand of one, hand of all" doctrine. Intended to kill includes the situation in which petitioner intended, contemplated, or anticipated that lethal force

18

would or might be used or that life would or might be taken in accomplishing the underlying felony. In the present case the evidence does not show that Petitioner killed or attempted to kill. The evidence does demonstrate beyond a reasonable doubt, however, that petitioner did help commit the Circle K robbery. Petitioner did not play an active part i n the event that led to the murder. Petitioner asserts that he should not share the blame of killing where he did not participate in the felony. Petitioner's rational is his criminal sentence must be directly related to his personal culpability of the murder. And is requested for this court to inquire into the relevant facts of "the character and record of petitioner, not on that of another armed robbery or Brown who shot the victim, for petitioner is entitled to an individualized consideration as a constitutional requirement in imposing a life sentence, and petitioner's own participation in the felony murder was attenuated and no proof that petitioner had any culpable mental state. The conviction for murder was excessive retribution for his crime. Petitioner states strenuously that he did "intend to kill". As pointed out, there is no evidence that petitioner took any act which he desired to, or was substantially certain would, cause death. Petitioner did not continue on the joint venture with Brown, Farmer, Lewis and Boyd to the motel and robbery of the Texaco Pitt Stop gas station. Petitioner had no weapon is a critical facet of the individualized determination of culpability required in a murder case on the mental state of petitioner. The ancient concept of malice aforethought was an early attempt to focus on mental state, but the state relied on that of Brown to hold petitioner culpable for murder. Petitioner's mental state was critical to weighing his culpability by the jury under a system of guided discretion, which petitioner in the absence of direct proof did not intend to cause the death of the victim. The Constitution forbid a life sentence in a murder case of a minor act or not shown to have had any culpable mental state. The jury findings regarding the murder against the petitioner was based solely on inferences from Farmer and Brown (co-defendants) participants in the underlying case, but it does not support the jury conclusions about petitioner's mental state concerning the shooting that actually occurred. Petitioner did not do nothing to help the victim because he was scared and surprised, also helplessness after Brown armed himself with another gun. This statement of Brown's is illustrative. Evidence of mental deficiency and mental illness or irresistible urge appears at Tr. pg. 80, lines 9-25 thru Tr. Pg. 88, lines 1-13. In light of this evidence the jury if exposed to this testimony could have found petitioner did not anticipate the murder. The record does not demonstrate that major participation by petitioner in the felony with a state of mind of reckless indifference to human life deserves the same punishment as intending to commit a murder or actually committing a murder. The murder was an unintentional of Brown's part solely and lacks the elements of premeditation and deliberation and because Petitioner did not choose to kill, his moral and criminal culpability of a different degree than Brown's. The punishment petitioner received does not conform to the choices he made. The State's ultimate sanction should have been used against Brown, Farmer and Lewis. Therefore, the sentence of life should be set aside.

**<u>Discussion</u>**

**1. Proper Respondent**

Adams has named as Respondents, Anthony Padula, the Warden of Lee Correctional Institution, and Alan Wilson, the Attorney General of South Carolina.[3]  Respondent's motion to dismiss Mr. Wilson should be granted.

**2. Anti-Terrorism and Effective Death Penalty Act ("AEDPA") Statute of Limitations**

Respondents assert that the petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the AEDPA.  The AEDPA became effective on April 24, 1996.  The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts.  One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions.  Subsection (d) of the statute now reads:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
>     (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>     (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>     (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

---

[3]The Office of the Attorney General in a letter dated February 28, 2011, requested that Alan Wilson be substituted for Henry McMaster as the party of record.

20

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The one-year statute of limitations begins to run on the date the Petitioner's conviction becomes final, not at the end of collateral review. Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). In South Carolina, a defendant must file a notice of appeal within 10 days of his conviction. Rule 203(b)(2), SCACR. Thus if a defendant does not file a direct appeal, his conviction becomes final ten days after the adjudication of guilt. Crawley v. Catoe, 257 F.3d 395 (4th Cir. 2001). If a defendant files a direct appeal and his conviction is affirmed, the conviction becomes final 90 days after the final ruling of the South Carolina Supreme Court. Harris, 209 F.3d at 328, n. 1 (conviction become final on the expiration of the 90-day period to seek review by the United States Supreme Court).

The statute of limitations is tolled during the period that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled for the entire period of the state post-conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 196 F.3d 557, 561 (4th Cir. 1999). Following the denial of relief in the state courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United States Supreme Court, nor the time a petition for certiorari is considered by the United States Supreme Court, is tolled." Crawley v. Catoe, 258 F.3d at 399. A state collateral proceeding must

be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply.  "(A)n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.  These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee."  Artuz v. Bennett, 531 U.S. 4, 8 (2000) (footnote omitted).  "When a post-conviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)."  Pace v. DiGulielmo, 544 U.S. 408, 414 (2005) quoting Carey v. Saffold, 536 U.S. 214, 236 (2002).

Generally, computing periods of time under 28 U.S.C. § 2244(d)(2) is pursuant to Fed. R. Civ. P. 6(a).  Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).

The Fourth Circuit has held that the statute of limitations in § 2254 is not jurisdictional, but subject to the doctrine of equitable tolling.  Equitable tolling applies only in "those rare instances where–due to circumstances external to the [Petitioner's] own conduct–it would be unconscionable to enforce the limitation against the [Petitioner]."  Harris, 209 F.3d at 330.  Under § 2244(d), the State bears the burden of asserting the statute of limitations.  Petitioner then bears the burden of establishing that his petition is timely or that he is entitled to the benefit of the doctrine of equitable tolling.  Hill v. Braxton, 277 F.3d 701 (4th Cir. 2002).  To benefit from the doctrine of equitable tolling, a petitioner must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way" preventing him from timely filing. Pace, 544 U.S. at 418.  An attorney's mistake in calculating the filing date for a habeas petition relative to the AEDPA's statute of limitations is not an extraordinary circumstance warranting equitable tolling. Lawrence v. Florida, 549 U.S. 327, 336-337 (2007) ("Attorney miscalculation [of a deadline] is

22

simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."). *See also* <u>Harris</u>, 209 F.3d at 331.

Respondents argue that the present petition is untimely because it was not filed within one year of the date on which Adams' conviction became final. The issue is whether the State court's grant of a belated appeal of PCR I pursuant to <u>Austin</u> effectively tolled the statute of limitations from the filing of PCR I until the South Carolina Court of Appeals finally concluded Adams' PCR process in February of 2010. The undersigned concludes that the statute of limitations was not tolled and the petition is untimely.

Section 2244(d)(2) quoted above provides that "(t)he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is <u>pending</u> shall not be counted toward any period of limitation under this subsection." (emphasis added). Courts which have construed this provision have relied upon the plain wording of the statute, i.e., periods of time when no collateral matter is pending do not toll the statute of limitations. In other words, the filing of multiple applications for post-conviction relief does not result in a new starting of the statute of limitations, nor does it render the entire time from the first filing to final resolution a tolling period. *See* <u>Fernandez v. Sternes</u>, 227 F.3d 977, 979 (7th Cir. 2000); <u>Gibson v. Klinger</u>, 232 F.3d 799, 804 (10th Cir. 2000); <u>Melancon v. Kaylo</u>, 259 F. 3d 401, 407 (5th Cir. 2001); <u>Moore v. Crosby</u>, 321 F.3d 1377, 1380 (11th Cir. 2003); and <u>Clemons v. Kansas</u>, 384 Fed.Appx. 734 (10th Cir. 2010) (unpublished). Although the Fourth Circuit does not appear to have addressed the issue, courts in this District have adopted this rationale when the South Carolina courts have ordered an <u>Austin</u> review. *See* <u>McHoney v. South Carolina</u>, 518 F.Supp.2d 700, 705 (D.S.C.

2007); Coleman v. Hagan, 2009 WL 2900698, *4 (D.S.C.); Gambrell v. Warden, 2010 WL 883008, * 7-8 (D.S.C.); and Smith v. Warden, 2010 WL 5672090, *2-3 (D.S.C.).

The procedural history discussed above shows that there was no PCR pending for almost two years between PCR I and PCR II, for over one year between PCR II and PCR III, and almost ten months between the conclusion of PCR III and the date the present petition was filed.[4] The statute of limitations was not tolled during these periods, and the present petition is untimely.

Adams does not argue that he is entitled to equitable tolling. Instead he argues that the statute of limitations was tolled pursuant to § 2244(d)(2). (Roseboro Response, p. 11). He cites two cases, neither of which support his argument: Healy v. DiPaolo, 981 F.Supp. 705 (D.Mass. 1997) and Parker v. Johnson, 988 F.Supp. 1474 (N.D.Ga. 1998). Both of these cases address the application of 28 U.S.C. § 2244(d)(2) to convictions which became final prior to the effective date of the AEDPA on April 24, 1996. Adams' conviction became final after that date.

## Conclusion

Based on the above discussion, the undersigned concludes that Adams' petition was untimely filed. It is therefore, recommended that the Respondents' motion for summary judgment be **granted**, and the petition **dismissed** without an evidentiary hearing.

_____              ____
Joseph R. McCrorey
United States Magistrate Judge

Columbia, South Carolina
January 23, 2012

**The parties are referred to the Notice Page attached hereto.**

_____

[4]Adams states that he submitted his petition for mailing to the prison mail room on December 22, 2010. (Petition, p. 51).

24

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).